IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE:<br><br>ALDEN H. ZUHLKE and<br>LISA A. ZUHLKE,<br><br>Debtors. | Case No. BK 24-40267-BSK<br>(Chapter 7) |
| PHILIP M. KELLY, CHAPTER 7 TRUSTEEE,<br><br>Plaintiff,<br><br>v.<br><br>ALDEN H. ZUHLKE, LISA A. ZUHLKE, DEREK A. ZUHLKE and KIMBERLY A. ZUHLKE, DILLAN A. ZUHLKE and MICHELLE L. ZUHLKE,<br><br>Defendants. | Ad. Proc. 24-4011-BSK<br><br>**BRIEF IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION TO STAY ADVERSARY PROCEEDING AND TO EXTEND EXPERT WITNESS DISCLOSURES AND IN RESPONSE TO DEFENDANTS' OBJECTION TO APPLICATION TO RETAIN CLINE WILLIAMS AS COUNSEL TO THE TRUSTEE** |

This Brief is submitted by Philip M. Kelly, Chapter 7, Trustee (the "Trustee") in opposition to Defendants' Derek and Dillan Zuhlke (collectively, the "Defendants") Motion to Stay the Adversary Proceeding (Ad. Proc. Doc. 66), Motion to extend the deadline for the disclosure of expert witnesses and reports (Ad. Proc. Doc. 67) and Defendants' Objection to the Trustee's application to retain Cline Williams as counsel to the Trustee (Case Doc. 112).

Defendants have interjected delay and considerable expense in these proceedings by:

• Not cooperating in the production of documents or in discovery as will be established on the Motion to Compel Discovery (Ad. Proc. Doc. 73, 76).

• Interposing frivolous objections to the Interrogatories and the Request for Production of Documents (Ad. Proc. Doc. 73, 76).

• Intimidation of Douglas Hall, who, together with his father control a majority of the voting interests in Sunshine Ranch Co., Inc., an entity in which Lisa Zuhlke owns a valuable interest.

• Refusing to participate in a "family meeting" to develop a plan to resolve the Trustee's claims.

1

- Filing a Motion to Stay the adversary proceeding without a legitimate basis in law or in fact.

- Objecting to the Trustee's application to employ counsel without a legitimate basis in law or in fact.

The Defendants have caused the estate to incur significant legal fees to the detriment of the estate. The Defendants' conduct has also caused the Trustee to devote unwarranted time to these matters when he could be pursuing property of the estate. The Defendants' motions and objections should be denied.

### A. The Motion to Stay Should be Denied.

Defendants' Motion to stay the adversary proceeding is based on the faulty premise that a defendant is permitted to set the terms, dictate the pace of litigation, direct recoveries by a Chapter 7 Trustee, and otherwise cause this case to languish because they believe that the Trustee *might* recover from sources rather than the Defendants who are the recipients of avoidable transactions of more than $1,000,000.00. This presumption is unsupported by the law or the evidence.

"The administration of a chapter 7 estate, including the pursuit of avoidance actions, should be left to the reasonable business judgment of the trustee, the legal representative of the estate." *In re Doc's Truck Center, LLC*, 2012 WL 4156262 at *4 (Bankr. N.D. W. Va. 2021). In *In re Rothstein Rosenfeldt Adler, P.A.*, 464 B.R. 465, 469 (Bankr. S.D. Fla. 2012) the defendants' motion to stay an adversary proceeding was denied, where, much like the Defendants herein, they argued that the avoidance actions against "innocent net losers" should be stayed so that the trustee could concentrate on the "most culpable" litigation targets. The court held that the requested stay usurped the Trustee's discretion in favor of interested parties, stating that trustees "have broad discretion in determining, in their own business judgment, how best to administer the estates to which they owe a fiduciary duty . . . [and] that such broad grant of discretion is applicable to the decision of whether and when to pursue litigation on behalf of an estate. . . . Interested parties cannot usurp a trustee's authority to make decisions regarding whether and when to pursue litigation." Id. *See also* In *Alameda Research, Ltd. v. Kives*, 2024 WL 717771 (Bankr. D. Del. 2024) (the court denied the defendants' motion to stay the trustee's avoidance action until after a Chapter 11 plan was confirmed because there was no undue risk of prejudice to any party by allowing the litigation to proceed).

2

Defendants cite *Landis v. North Am. Co.,* 299 U.S. 248, 255, 57 S. Ct. 163, 81 L. Ed. 153 (1936) to suggest that this Court has unlimited discretion to stay this adversary proceeding, which is not true. *Landis* asked whether a pending action should be stayed until the Supreme Court could settle an issue of law dispositive to the outcome of other pending civil suits. *Landis* is distinguishable because no question of law will be settled in the Adversary Proceeding that would be dispositive to the outcome of any other litigation. Not only is *Landis* distinguishable, but it supports the Trustee's objection as the Court held that a party requesting a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 299 U.S. 248, 255.

Defendants' reliance on *In re Latimer*, 489 B.R. 844 (Bankr. N.D. Ala., 2013) and *In re VeroBlue Farms USA, Inc.*, 2022 WL 1195643 (Bankr. N.D. Iowa 2022), much like their citation to *Landis* is misplaced, as at issue in both cases was whether a stay was the proper procedural mechanism for a district court to employ when deferring to a parallel or related state-court proceeding. That is not the case here.

Defendants' reliance on *Sec. & Exch. Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) is equally faulty, as the issue there was whether the Constitution required a stay of civil proceedings pending the outcome of a criminal matter. There are no known criminal matters pending at this time involving any of the Defendants.

Defendants' factual claims are speculative, at best. Defendants claim, "upon completion of the Trustee's sale of all undisputed assets of the Debtor, it is more likely than not that the creditors' claims will be satisfied in full" (Ad. Proc. Doc. 66 at ¶21). The Trustee understands the so called "undisputed assets" are comprised of Alden Zuhlke's ("Alden") one-third interest in Z Brothers, LLC, Lisa Zuhlke's ("Lisa") 11.764% interest in Sunshine Ranch Co., Inc. ("Sunshine"), Alden's 9.4663% membership interests in Bloomfield, LLC and Hartington, LLC, which are the general partners of Swine 84, a Nebraska general partnership in which Defendant Derek Zuhlke also holds an interest, and promissory notes owing to the Debtors by their son, Darin Zuhlke, evidencing hundreds of thousands of dollars in "loans" or "investments" with Darin Zuhlke, a brother of the Defendants.

3

The Trustee may not be able to force the various entities to redeem the Debtors' interests for anything approximating fair value, as the operating agreements of the limited liability companies contain restrictions on the sale of the membership interests and there is no recognized market for minority interests in small, closely held entities (Ad. Proc. Doc. 75, ¶14, 15, 38, 41, 42). The Trustee asked the Defendants to provide their analysis of the assets that could be used to satisfy creditors' claims but the Trustee has not received a response (Ad. Proc. Doc. 75, ¶54).

Notwithstanding the Defendants' suggestion to the contrary, the Trustee is diligently pursuing liquidation of the so called "undisputed assets" but has been met at every turn by resistance, obfuscation, and delay by the Debtors and their family.

The Trustee requested an accounting from the Debtors of the payments that they received on five promissory notes executed by their children or entities owned by them. The Debtors refused to do so (Ad. Proc. Doc. 75, ¶32).

The Trustee is collecting the periodic payment on the promissory notes issued by Darin Zuhlke, to whom the Debtors transferred hundreds of thousands of dollars disguised as loans or investments during the time that the Debtors made the avoidable transfers to Defendants (Ad. Proc. Doc. 75, ¶27, 28, 29, 32). Darin Zuhlke's discovery responses indicate that an event of default has occurred under two of the promissory notes and that three of the notes appear to be avoidable transactions (Ad. Proc. Doc. 75, ¶34). The Trustee will need to sue Mr. Zuhlke to collect the notes.

The Trustee made a demand on Defendants to pay unpaid rent owing to the estate, which they have refused to pay (Ad. Proc. Doc. 75, ¶43, 44, 45). The Defendants have not denied that the rent is unpaid (Ad. Proc. Doc. 75, ¶46, 47). Instead, the Defendants claim that no rent is owed for their use of the Debtors' land in 2024 because their leases were not approved by this Court and because Defendants purchased the land at an execution sale and became the owner of the growing crops. The Defendants' position is not legally sound as crops growing on land are treated as personal property and do not pass to the purchaser at a judicial sale. *Miles v. Prudential Ins. Co.*, 136 Neb. 46, 285 N.W. 90 (1939). It should be noted that Defendants paid an average of more than $6,500.00 per acre for two small tracts of farmland that they purchased at the execution sale as opposed to the $5,500 an acre for the avoidable transactions (Ad. Proc. Doc. 75, Ex. A).

The Trustee made a demand on Z Brothers, LLC ("Z Brothers") to redeem Alden's interest in the company. While the Debtors' schedules reflect that Alden's interest is worth more than $444,000.00, Z Brothers offered to pay $140,000.00 because the Debtor's membership interest is purported to be "a restricted non-voting, minority interest" (Ad. Proc. Doc. 75, ¶14, 15).

Z Brothers, much like the Debtors' other familial transfers, involves chicanery, as the members of Z Brothers amended the operating agreement around the time that the Debtors made the avoidable transfers to Defendants in an attempt to make it more difficult to sell the Debtor's membership interest. This amendment benefits Defendant Derek Zuhlke, who farms the land owned by Z Brothers (Ad. Proc. Doc. 75, ¶12). The Trustee has offered to sell the Debtor's interest in Z Brothers to the Defendants, to which they have not responded (Ad. Proc. Doc. 75, ¶18). The Trustee, in the exercise of his sound discretion, refused a fire sale of the Debtor's interest in Z Brothers and may instead pursue litigation to set aside the operating agreement to maximize the value of this asset for the estate.

The Adversary Proceeding, as well as the Debtors' interests in the so called "undisputed assets" involve the Debtors and their family members, including the Defendants. While Defendants complain about litigation costs, the Debtors and their family members could end all litigation costs by making a joint offer to the Trustee. The Trustee requested that the Debtors and their family members, including Defendants, fashion a joint plan to pay creditors' claims. No offer to do so has been made (Ad. Proc. Doc. 75, ¶23).

Douglas Hall, the President of Sunshine has indicated that he is no longer willing to redeem Lisa Zuhlke's stock unless the Defendants and their relatives contribute to a global resolution of the claims in the Debtors' estate (Ad. Proc. Doc. 77, 69:3-71:12). Mr. Hall testified that he had arranged financing to purchase Lisa's shares in Sunshine (Ad. Proc. Doc. 77, 101:16-103:18). Mr. Hall withdrew his offer to pay $1.7 million for Lisa's shares in Sunshine because he could not "save" the Debtors (Ad. Proc. Doc. 77, 103:19-105:9). Mr. Hall testified that notwithstanding his "multiple tries to have a family meeting" to address the Debtors' predicament, none of the Debtors' family members, including Defendants, were willing to do so (Ad. Proc. Doc. 77, 106:4-107:8). The Defendants leave the Trustee no alternative but to prosecute the Adversary

5

Proceeding, to collect the rents owing by the Defendants, to sue to collect the promissory notes and to litigate any disputes in the liquidation of the "undisputed assets".

### B.     The Defendants do not have standing.

The Trustee filed an Application to employ Cline Williams as "special counsel" to assist in the collection of property of the estate, which is anticipated to require further litigation (Case Doc. 110) (the "Application").  Neither the Application nor the Declaration submitted in support of the Application (Case Doc. 111) refer to Section 327(e) of the Bankruptcy Code, notwithstanding Defendants' assertion to the contrary (Case Doc. 112, ¶8). To be clear, the Application does not seek the appointment of Cline Williams under Section 327(e), rather it seeks employment under Section 327(a). Any reference to "special counsel' is inadvertent and should be disregarded, as Cline Williams has never represented the Debtors.

The Defendants do not have standing to object to the Application. To have standing, the Defendants must have a direct pecuniary interest in the Debtor's bankruptcy estate. *In re Racing Services, Inc.*, 594 B.R. 678, 685-86 (Bankr. N.D. 2018); *In re Karsten Gering, LLC*, 2015 WL 7961937 (Bankr. D. Neb. 2015); *In re McQuillen Place Company, LLC,* (Bankr. N.D. Iowa 2021).

Section 327(c) addresses standing and provides "In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection *by another creditor or the United States trustee*, in which case the court shall disapprove such employment if there is an actual conflict of interest."  The Defendants are not a creditor of the estate and therefore do not have standing.

The Bankruptcy Court for the District of Delaware held that defendants in fraudulent transfer cases who objected to an application to employ counsel for the Chapter 7 trustee did not qualify as creditors and lacked standing to object to the application. *In re Team Systems International, LLC*, 2024 WL 386823 (Bankr. D. Del. 2024). In so holding, the court stated that Section 327(c) "expressly and unambiguously limits standing to object to a retention in these circumstances to other creditors or the United States trustee. *Id.* at *2. The court held "[i]n this case, the Defendants, even if deemed to be parties in interest, lack standing to object to the Application, as Section 327(c) addresses who may object to the retention of counsel by the Trustee on account of that counsel's representation of a creditor."  The court concluded that Section 327(c)

6

"expressly and unambiguously limits standing to object to a retention in these circumstances to other creditors or the United States trustee. The objecting defendants are neither. They hold equity in the debtor but are not creditors. They therefore lack standing to raise this objection." *Id.* at *2.

The court also rejected the defendants' argument that they had standing as contingent creditors, stating that "Section 502(h) does not *create* a claim, it merely addresses *when* a claim that might come into being as a result of the trustee's recovery of property would arise" and that "in order to have standing, the objecting defendants must still describe some set of circumstances in which they might end up holding a claim." Id. at *3 (emphasis original). The District Court affirmed the decision on appeal. *In re Team Systems International, LLC*, 2024 WL 5008854 (D. Del. 2024). Defendants are not creditors of the Debtors and therefore lack standing to object to the Application.

**C.    The appointment of Cline Williams under Section 327(a) is proper.**

Section 327(a) provides "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Section 327(c) provides that Cline Williams is not disqualified "solely because of its employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment *if there is an actual conflict of interest.*" (emphasis added). In this case no objection has been made by a creditor or by the United States trustee.

Section 327(a) imposes two conditions for an attorney's employment: the attorney must be "disinterested" and the attorney cannot hold or represent an interest adverse to the estate. *In re M & M Marketing, L.L.C.*, 426 B.R. 796 (8th Cir. BAP, 2010). Whether Cline Williams is disinterested is determined by Section 101(14) which defines a "disinterested person" as someone that "(A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

7

Cline Williams is disinterested as it is not a creditor of the Debtors and does not have an interest that is "materially adverse" to the interest of the estate or its creditors. To "hold an interest adverse to the estate" means: "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." *In re M & M Marketing, L.L.C.,* supra at 802, 803. Cline Williams holds no economic interest in the estate and is motivated to maximize the recoveries by the estate.

Cline Williams' representation of Rabo does not create an interest that is adverse to the estate, as Rabo's interests are aligned with the Trustee.  While Rabo claims to hold a perfected security interest in the promissory notes, the equipment and each of the entities in which the Debtors have an interest, the Trustee and Rabo have agreed to coordinate their efforts to liquidate property of the estate. The Trustee and Rabo have reserved all rights, claims and defenses they may each have to the proceeds of the property of the estate (Case Doc. 111, ¶10), which may or may not arise after the liquidation of property of the estate.  In conclusion, the Trustee and Rabo wish to first reduce all assets to cash and then determine if there is any dispute between them.

The Trustee and Rabo seek to maximize the Trustee's recovery for the benefit of all creditors, including the priority claims of the Internal Revenue Service and the Nebraska Department of Revenue.  Cline Williams has done discovery in the Antelope County litigation and in the Adversary Proceeding. Cline Williams has a universe of knowledge about the Debtors and their transactions with family members, including the Defendants, that no other law firm has. If the Application were to be denied, new counsel to the Trustee would be required to review thousands of pages of documents and hundreds of pleadings in order to obtain knowledge comparable to that of Cline Williams about the transfers by the Debtors to Defendants and their family members.  Such duplication of efforts is not in the best interests of the bankruptcy estate.

If Cline Williams, by its representation of Rabo, was deemed to be adverse, it would be required to withdraw from representing the Trustee in the Adversary Proceeding, a result the Defendants likely intend.  The Trustee would be required to retain new trial counsel who would have to become familiar with the discovery and prepare for a trial presently set in the first week of July 2025. Such a result is not in

8

the best interests of the estate because it will multiply the costs and delay the administration of the estate.

Defendants complain that the Trustee should have sold Lisa's stock to Sunshine/Douglas Hall for $1.7 million (Case Doc. 112, ¶10), or for almost half of what Defendants "valued conservatively" at two to three million dollars (Ad. Proc. Doc. 66, ¶14). The Trustee declined to do so in the exercise of his reasonable discretion.

Defendants suggest that this offer was increased to just under $2 million, which is not true (Ad. Proc. Doc. 78, ¶4). On the contrary, Mr. Hall testified that while he may have discussed with his former counsel a different offer, the only offer made was the $1.7 million offer for Lisa's stock (Ad. Proc. Doc. 77, 148:5-149:1).

Defendants claim that Cline Willams or Rabo prevented the sale of Lisa's interests in Sunshine by threatening Mr. Douglas Hall, the President of Sunshine (Case Doc. 112, ¶12). This too is not true. Mr. Hall testified that the only threat he perceived was having to write a check for $1.7 million or having a third party acquire Lisa's stock (Ad. Proc. Doc. 77, 103:19-105:3; 179:11-180:21). Mr. Hall also testified that he was not willing to purchase Lisa's stock unless the Defendants and their relatives contribute to a global resolution of the claims in the Debtors' estate (Ad. Proc. Doc. 77, 69:3-71:12). Mr. Hall withdrew his $1.7 million offer for Lisa's shares because he could not "save" the Debtors (Ad. Proc. Doc. 77, 103:19-105:9). Mr. Hall testified that notwithstanding his "multiple tries to have a family meeting" to address the Debtors' predicament, none of the Debtors' family members, including Defendants, were willing to do so (Ad. Proc. Doc. 77, 106:4-107:8).

Finally, Mr. Hall testified that another factor influencing his decision to withdraw his offer to purchase Lisa's stock was an altercation that occurred in November of 2024 when Mr. Hall asked the Debtors about their "plan" to resolve their debts and potential criminal liability. Alden Zuhlke shoved Mr. Hall several times and Mr. Hall has not spoken with Alden since then (Ad. Proc. Doc. 77, 72:4-74:10).

The Defendants attempted to intimidate Mr. Hall during his deposition by accusing him of trespassing multiple times (Ad. Proc. Doc. 77, 171:6-177:5). The Defendants have interfered in the sale of Lisa's stock by refusing to meet with their family and by their treatment of Mr. Hall. The Debtor has assaulted Mr. Hall. Nevertheless, the Trustee believes that the "door is still open" to the sale of Lisa's stock to Mr. Hall (Ad. Proc. Doc.77, 194:9-22).

**D.    The Trustee's litigation costs will be disclosed and reviewed.**

Defendants assert that the manner in which the Trustee proposes to compensate Cline Williams "provides none of the court review and approval under 11 U.S.C. § 327(a) and provides no transparency into the fees that are paid to Cline Williams" (Case Doc. 112, ¶11). To the contrary, the Application states that Cline Williams will seek compensation from Rabo which in turn will seek reimbursement from the Trustee (Case Doc. 110, ¶14). Cline Williams, Rabo and the Trustee are well aware that reimbursement of a professional employed by the Trustee is subject to Section 330, which requires notice to parties in interest and the United States trustee as well as a hearing before this Court. If Defendants believed that Cline Williams, Rabo or the Trustee would ignore Section 330, they could have sought clarification. Defendants instead chose to file a groundless objection to the Application.

**E.    The Defendants' request to delay expert disclosures should be denied.**

Defendants were required to comply with Fed. R. Civ. P. 26(a)(2) and disclose the identity of their experts and produce their expert's reports by February 1, 2025 (Ad. Proc. Doc. 24, ¶10). The Defendants requested, and the Trustee consented to an extension of that deadline to March 18, 2025. Defendants sought and obtained a further consensual extension of the deadline to April 9, 2025, and then again to April 15, 2025 (Ad. Proc. Doc. 75, ¶57). On March 25, 2025, Defendants assured the Trustee that they would produce any additional statements of value by the extended deadline (Ad. Proc. 78, ¶8). The Trustee timely designated his expert and produced his report. Defendants now seek additional time to disclose their expert(s) and to produce their reports, suggesting that they need an expert to opine on the value of Lisa's interest in Sunshine, which is not relevant to the matters at issue in the adversary proceeding.

The Trustee's Complaint invokes Neb. Rev. Stat. § 36-805(a), which does not require the Trustee to prove that the Debtors were insolvent at the time of the transfers. The Trustee's Complaint also invokes Neb. Rev. Stat. § 36-806(a) which requires proof that the Debtors were insolvent at the time of the transfers. Insolvency is defined as "at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets" Neb. Rev. Stat. § 36-803(a). In determining the value of the Debtors' assets under Section 36-803(a) this Court may not consider "property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under the Uniform Voidable

10

Transactions Act." Neb. Rev. Stat. § 36-803(c). The Debtors concealed Lisa Zuhlke's stock in Sunshine. Accordingly, the value of Sunshine stock (as well as the value of the farmland transferred to Defendants) is not relevant to a determination of the Debtors' insolvency under Section 36-803(a).

Defendants offer no justification for their failure to designate an expert who will testify as to the value of the land transferred to them, nor have they explained their failure to produce their expert's report. Because Defendants did not timely disclose their expert or produce the expert's report, they are not allowed to use an expert witness at a trial, "unless the failure was substantially justified or is harmless." *E&I Global Energy Services, Inc. v. Liberty Mutual Insurance Company*, __F.4th ___, 2025 WL 1007290 (8th Cir. 2025) (citing Fed. R. Civ. P. 37(c)(1)). Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for a failure to comply with Rule 26(a). "Under Rule 37(c)(1), exclusion occurs automatically by operation of the rule; the rule permits, but does not require, the imposition of an alternative sanction on a party's motion." Id. (internal citations omitted).

The Trustee will be prejudiced by Defendants' failure to designate experts or produce their reports. A number of depositions have yet to be taken in this case, including any expert that may be designated by Defendants. The Trustee will spend substantial time and resources investigating and rebutting the land values asserted in the yet unproduced report by an unidentified expert. Accordingly, the motion should be denied and the Defendants should not be permitted to use an expert witness at a trial.

## Conclusion

For the foregoing reasons, the Trustee requests that the Court deny Defendants' request to stay the Adversary Proceeding, deny the Defendants' request to extend the time to designate experts and produce reports, and deny the Defendants' objection to the Application to employ Cline Williams as counsel to the Trustee. The Trustee also requests that the Defendants should not be allowed to use an expert witness at trial due to their failure to disclose their expert and produce his or her report. Finally, the Trustee requests that Defendants be ordered to pay his attorney's fees and costs in connection with these matters.

11

PHILIP M. KELLY, CHAPTER 7 TRUSTEE

By:  /s/ Richard P. Garden, Jr.
     Richard P. Garden, Jr. - #17685
     John F. Zimmer, V - #26127
     CLINE WILLIAMS
     WRIGHT JOHNSON & OLDFATHER, L.L.P.
     233 South 13th Street
     1900 U.S. Bank Building
     Lincoln, NE 68508-2095
     (402) 474-6900
     rgarden@clinewilliams.com
     jzimmer@clinewilliams.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.

/s/ Richard P. Garden, Jr.
Richard P. Garden, Jr.

4934-4198-6364, v. 1